FILED
2021 Jun-22 PM 04:34
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**WESTERN DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | ) |
| | ) |
| **v.** | ) |
| | ) |
| | ) |
| **JEREMY BERNARD BROWN** | ) |

# PLEA AGREEMENT

The defendant agrees to plead guilty to **COUNT ONE** of the Information filed in the above numbered and captioned matter. In exchange, the United States Attorney, acting on behalf of the Government and through the undersigned Assistant United States Attorney, agrees to recommend the disposition specified below, subject to the conditions in paragraphs **VII** and **VIII**.

## TERMS OF THE AGREEMENT

### I. MAXIMUM PUNISHMENT

The defendant understands that the maximum statutory punishment that may be imposed for the crime of giving a false statement during the purchase of a firearm, in violation of Title 18, United States Code, Section 922(a)(6), as charged in COUNT ONE, is:

a. Imprisonment for not more than 10 years;

b. A fine of not more than $250,000; or,

c. Both (a and b);

d. Supervised release term of not more than 3 years; and

e. Special Assessment Fee of $100.

## II. FACTUAL BASIS FOR PLEA

The Government is prepared to prove, at a minimum, the following facts at the trial of this case:

On July 20, 2020, Uniontown police officers encountered two individuals, D.C. and D.H., at the E&Z Event Center in Uniontown, Alabama in a black Kia Sorento with a Maryland license plate. Officers could smell marijuana coming from inside the vehicle and saw marijuana residue in plain view. Officers searched the vehicle and found marijuana, a marijuana grinder, a set of digital scales, and ammunition in the front of the vehicle. Officers then found a suitcase in the back of the vehicle. Inside the suitcase, officers found clothes, ten firearms, and additional ammunition hidden underneath the lining of the suitcase. Seven of the firearms that were in the suitcase appeared to be new and were still in factory boxes.

Uniontown police officers notified the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) and ATF agents assisted with the investigation. Agents interviewed D.C. and D.H. separately. D.C. initially claimed that the firearms

belonged to him, but then told ATF agents that the firearms belonged to his cousin Jeremy Bernard Brown. D.C. claimed that Brown asked him to transport the firearms to Brown's mother's house. D.C. stated that he was with Brown when Brown purchased the firearms at Wade's Jewelry & Pawn Shop, Inc. (Wade's Jewelry & Pawn). D.C. also told agents that he had been to the gun store with Brown on a previous trip where Brown purchased other guns. D.H. denied any knowledge of the firearms being in the vehicle.

ATF Special Agent (SA) Kris Brantley contacted Wade's Jewelry & Pawn in Tuscaloosa, Alabama. The business gave SA Brantley the transaction history for Brown from March 2020 to July 2020. Specifically, Brown purchased five firearms on July 8, 2020 and five firearms on July 20, 2020. Eight of the firearms that Brown purchased on those dates were in the suitcase in the vehicle with D.C. and D.H.

The firearms Brown purchased on July 8, 2020 include:

- a Keltec 9mm pistol bearing serial number AAA627,
- a Taurus 9mm pistol bearing serial number TMC91151,
- a Taurus 9mm pistol bearing serial number ABE615559,
- a Taurus 9mm pistol bearing serial number ABE587326, and
- a Taurus 9mm pistol bearing serial number ABE605240

The firearms BROWN purchased on July 20, 2020 include:

- a SCCY 9mm pistol, bearing serial number 430214
- a New England .32 caliber pistol bearing serial number NE005470,
- a Taurus 9mm pistol bearing serial number ABE583755,
- a Kahr .40 caliber pistol bearing serial number JN8651, and
- a Taurus .380 caliber pistol bearing serial number 1F056812

SA Brantley obtained the surveillance video from Wade's Jewelry & Pawn pertaining to Brown's firearm purchases on July 8, 2020 and July 20, 2020.

**July 8, 2020:**

On July 8, 2020, the surveillance video showed that a white Nissan Rogue arrived at Wade's Jewelry & Pawn. D.C. exited the driver's seat and Brown exited the rear passenger seat. Both individuals went into the store and looked at firearms. They appeared to be taking photographs and texting on their phones while looking at firearms. Brown started to purchase firearms and D.C. pointed out another firearm to add to the transaction, so Brown bought it as well. Brown completed the ATF Firearms Transaction Record at the store and marked "Yes" for the question: "Are you the actual transferee/buyer of the firearm(s) listed on this form?" Following the question is a warning in bold letters, "Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If

you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."

While purchasing the firearms, Brown asked the clerk if anything would happen to him due to him purchasing all of the firearms. The clerk explained to Brown that as long as the firearms were being purchased for him (like he indicated on the form), he would be fine. The clerk also told Brown that if he kept purchasing several firearms, ATF would get suspicious.

D.C. also asked the clerk if he had to have an Alabama identification card to purchase firearms and stated that he only had a Massachusetts identification card. The clerk told D.C. that an Alabama identification card was required to purchase firearms in Alabama, and that therefore, he could not purchase firearms in Alabama.

The clerk notified Brown that his firearms transaction he was trying to conduct would be delayed due to the background check and that it would be up to three days before they were allowed to complete the transaction. Brown and D.C. left the store.

SA Brantley obtained documents that showed that the five firearms Brown was trying to purchase on July 8, 2020 were actually transferred to him on July 11, 2020 (three days after the original delay).

**July 20, 2020:**

On July 20, 2020, surveillance video shows that a dark colored Kia Sorento arrived at Wade's Jewelry & Pawn with D.C. driving, D.H. in the passenger seat and Brown in the rear driver's seat. D.H., D.C., and Brown all entered the store and viewed and handled several firearms. All three individuals used their phones while in the store and it appeared they were taking photographs of different firearms. D.H. exited the store first. Then D.C. and Brown both approached the checkout counter. D.C. left the store, then Brown completed the transaction for five firearms. He got into the Kia Sorento with D.C. and D.H. and they left the store.

D.C. sent Brown $880 on July 20, 2020 at 12:26PM for the firearms that were purchased at Wade's Jewelry & Pawn on July 20. Brown also completed the ATF Firearms Transaction Record for the purchase at the store on July 20, and marked "Yes" to the question: "Are you the actual transferee/buyer of the firearm(s) listed on this form?" Following the question is a warning, "Warning: You are not the actual transferee/buyer if you are acquiring the firearm(s) on behalf of another person. If you are not the actual transferee/buyer, the licensee cannot transfer the firearm(s) to you."

After Uniontown Police encountered D.C. and D.H. with the firearms that Brown purchased, ATF SA Brantley interviewed Brown a few months later.

**Interview of Brown:**

On 9/24/20, SA Brantley and another agent interviewed Jeremy BROWN at his residence located at 113 Rosscommon Road, Tuscaloosa, Alabama. This interview was recorded utilizing a digital audio recording device maintained by SA Brantley. Brown said he knows D.C. and D.H. Brown advised that D.C. lives in Boston, Massachusetts and he has been living there for a couple years. Brown initially said he purchased the firearms for himself and that D.C had the firearms because he was taking them to Brown's brother's house.

However, Brown then stated D.C sent him a Facebook message asking him to purchase the firearms for him, and that D.C. asked Brown to obtain firearms for him. Brown said D.C knows that it is easy to buy a gun in Alabama, as opposed to Massachusetts. Brown said he did not think D.C. was old enough to purchase firearms from the store. Brown told SA Brantley that he told D.C. that he did not have any firearms for sale at the moment and that he did not know anyone else selling any firearms. D.C. then asked Brown to go into a store and purchase firearms. Brown told D.C. that firearms at the store were not cheap, so D.C. then went to Wade's Jewelry & Pawn and checked prices for firearms. D.C. told Brown that the store did have cheap firearms for sale. Brown also stated that D.H. mentioned that he was

going to purchase a firearm from someone while he was in Alabama, and that D.C. told him he was going to get someone else to purchase firearms for him as well.

When SA Brantley asked Brown about his visits with D.C and D.H. at Wade's Jewelry & Pawn, Brown said D.C. and D.H. both went inside Wade's Jewelry & Pawn. Brown said D.C. picked out the firearms for Brown to purchase. Brown stated that he was delayed when he purchased the firearms on July 8, 2020, and D.C. went back to Boston. D.C. was back in town on July 20, 2020 and went to Wade's Jewelry & Pawn with him again. D.C. picked out the firearms for Brown to purchase.

Brown stated that D.C. gave Brown cash to pay for the firearms on July 8, 2020. Brown also told SA Brantley that D.C. should have had all the firearms that Brown had purchased on July 8, 2020 and July 20, 2020. Brown stated that all of the firearms he purchased on those two dates were for D.C., except for two brown Taurus pistols. Brown told SA Brantley that he knew buying firearms for other people is illegal. D.C. told Brown that he was going to sell the firearms in Boston, Massachusetts, because he could make more money selling the firearms in Boston.

Brown confirmed that D.C. sent him a Cash App payment for the transaction on July 20, 2020 and that Brown's Cash App name is $Jayybee003 D.C.'s Cash App name is $edboiRambo. Brown also showed SA Brantley the actual transaction where D.C. sent him $880 on Cash App on July 20, 2020 at 12:26PM. Brown told SA

Brantley that his agreement with D.C. was that D.C. was supposed to pay him $100 for every firearm that Brown purchased, but that D.C. never paid him the full amount.

After the purchase on July 20, 2020, Brown put the firearms on the backseat of D.C.'s vehicle. Brown said he left them in the bag the store put them in. Brown stated that D.C. was driving a black SUV. D.C told Brown he was going to "put the guns somewhere" because he did not want to get "caught with them".

Brown checked his Facebook for messages with D.C. He showed SA Brantley the following messages from his Facebook:

- **7/8/20-** D.C. left Brown several voice messages telling Brown that D.C. was about to be at Brown's house. D.C. also told Brown that he was going to send money to his "Cash App".
- **7/11/20-** Brown told D.C. "They ready" (referring to the guns).
- **7/11/20-** D.C. said, "I'm gonna come get them by Monday".
- **7/16/20-** D.C. told Brown the GPS said he would be at Brown's house at 3:40.
- **7/20/20-** D.C. told Brown that he was coming to Tuscaloosa from Greensboro.

**7/20/20 at 11:00AM-** D.C. told Brown he was in his garage.

During the interview, Brown stated that he also purchased a .45 caliber firearm for D.C from a "guy in Greensboro".

**The defendant hereby stipulates that the facts stated above are substantially correct and that the Court can use these facts in calculating the defendant's sentence. The defendant further acknowledges that these facts do not constitute all of the evidence of each and every act that the defendant and/or any co-conspirators may have committed.**

The parties agree that the defendant did not engage in the trafficking of firearms as that term is defined in USSG 2K2.1(b)(5) and did not possess or transport any firearm believing it would be used or possessed in connection with another felony offense.

Jeremy Brown
**JEREMY BERNARD BROWN**

## III. <u>RECOMMENDED SENTENCE</u>

Subject to the limitations in paragraph **VIII** regarding subsequent conduct and pursuant to Rule 11(c)(1)(B), Fed.R.Crim.P., the government will recommend the following disposition:

(a) That the defendant be awarded an appropriate reduction in offense level for acceptance of responsibility;

(b) That the defendant be remanded to the custody of the Bureau of Prisons and incarcerated for a term within the advisory United States Sentencing Guideline range, as that is determined by the court on the date that the sentence is pronounced;

(c) That following the said term of imprisonment, the defendant be placed on supervised release for a period to be determined by the court, subject to the standard conditions of supervised release as set forth in U.S.S.G § 5D1.3;

(d) That the defendant be required to pay a fine in accordance with the sentencing guidelines, said amount due and owing as of the date sentence is pronounced, with any outstanding balance to be paid in full by the expiration of the term of supervised release; and

(e) That the defendant pay a special assessment fee of $100, said amount due and owing as of the date sentence is pronounced.

## IV. WAIVER OF RIGHT TO APPEAL AND POST-CONVICTION RELIEF

**In consideration of the recommended disposition of this case, I, JEREMY BERNARD BROWN, hereby waive and give up my right to appeal my conviction and/or sentence in this case, as well as any fines, restitution, and forfeiture orders, the court might impose. Further, I waive and give up the right to challenge my conviction and/or sentence, any fines, restitution, forfeiture orders imposed or the manner in which my conviction and/or sentence, any fines, restitution, and forfeiture orders were determined in any post-conviction**

**proceeding, including, but not limited to, a motion brought under 28 U.S.C. § 2255.**

**The defendant reserves the right to contest in an appeal or post-conviction proceeding either or both of the following:**

**(a) Any sentence imposed in excess of the applicable statutory maximum sentence(s);**

**(b) Any sentence imposed in excess of the guideline sentencing range determined by the court at the time sentence is imposed; and**

**(c) Any claims of ineffective assistance of counsel.**

**The defendant acknowledges that before giving up these rights, the defendant discussed the Federal Sentencing Guidelines and their application to the defendant's case with the defendant's attorney, who explained them to the defendant's satisfaction. The defendant further acknowledges and understands that the government retains its right to appeal where authorized by statute.**

**I, JEREMY BERNARD BROWN, hereby place my signature on the line directly below to signify that I fully understand the foregoing paragraphs, and that I am knowingly and voluntarily entering into this waiver.**

[signature]

**JEREMY BERNARD BROWN**

## V. UNITED STATES SENTENCING GUIDELINES

Defendant's counsel has explained to the defendant, that in light of the United States Supreme Court's decision in United States v. Booker, the federal sentencing guidelines are **advisory** in nature. Sentencing is in the court's discretion and is no longer required to be within the guideline range. The defendant agrees that, pursuant to this agreement, the court may use facts it finds by a preponderance of the evidence to reach an advisory guideline range, and the defendant explicitly waives any right to have those facts found by a jury beyond a reasonable doubt.

## VI. AGREEMENT NOT BINDING ON COURT

The defendant fully and completely understands and agrees that it is the Court's duty to impose sentence upon the defendant and that any sentence recommended by the government is **NOT BINDING UPON THE COURT,** and that the Court is not required to accept the government's recommendation. Further, the defendant understands that if the Court does not accept the government's recommendation, the defendant does not have the right to withdraw the guilty plea.

## VII. VOIDING OF AGREEMENT

The defendant understands that should the defendant move the Court to accept the defendant's plea of guilty in accordance with, or pursuant to, the provisions of North Carolina v. Alford, 400 U.S. 25 (1970), or tender a plea of *nolo contendere* to

the charges, this agreement will become NULL and VOID. In that event, the government will not be bound by any of the terms, conditions, or recommendations, express or implied, which are contained herein.

## VIII. SUBSEQUENT CONDUCT

**The defendant understands that should the defendant violate any condition of pretrial release or violate any federal, state, or local law, or should the defendant say or do something that is inconsistent with acceptance of responsibility, the United States will no longer be bound by its obligation to make the recommendations set forth in paragraph III of the Agreement, but instead, may make any recommendation deemed appropriate by the United States Attorney in his sole discretion.**

## IX. OTHER DISTRICTS AND JURISDICTIONS

The defendant understands and agrees that this agreement **DOES NOT BIND** any other United States Attorney in any other district, or any other state or local authority.

## X. AGREEMENT REGARDING RELEVANT CONDUCT AND RESTITUTION

As part of the defendant's plea agreement, the defendant admits to the above facts associated with the charges and relevant conduct for any other acts. The defendant understands and agrees that the relevant conduct contained in the factual

basis will be used by the Court to determine the defendant's range of punishment under the advisory sentencing guidelines. The defendant admits that all of the crimes listed in the factual basis are part of the same acts, scheme, and course of conduct. This agreement is not meant, however, to prohibit the United States Probation Office or the Court from considering any other acts and factors which may constitute or relate to relevant conduct. Additionally, if this agreement contains any provisions providing for the dismissal of any counts, the defendant agrees to pay any appropriate restitution to each of the separate and proximate victims related to those counts should there be any.

## XI. TAX, FORFEITURE AND OTHER CIVIL/ADMINISTRATIVE PROCEEDINGS

Unless otherwise specified herein, the defendant understands and acknowledges that this agreement does not apply to or in any way limit any pending or prospective proceedings related to defendant's **tax liabilities**, if any, or to any pending or prospective **forfeiture** or other **civil** or **administrative** proceedings.

Defendant recognizes that pleading guilty may have consequences with respect to his immigration status if he is not a citizen of the United States. Under federal law, a broad range of crimes are removable offenses, including the offense to which defendant is pleading guilty. Removal and other immigration consequences are the subject of a separate proceeding, however, and defendant understands that

no one, including his attorney or the district court, can predict to a certainty the effect of his conviction on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his plea may entail, even if the consequence is his automatic removal from the United States.

## XII. DEFENDANT'S UNDERSTANDING

I have read and understand the provisions of this agreement consisting of 18 pages. I have discussed the case and my constitutional and other rights with my lawyer. I am satisfied with my lawyer's representation in this case. I understand that by pleading guilty, I will be waiving and giving up my right to continue to plead not guilty, to a trial by jury, to the assistance of counsel at that trial, to confront, cross-examine, or compel the attendance of witnesses, to present evidence in my behalf, to maintain my privilege against self-incrimination, and to the presumption of innocence. I agree to enter my plea as indicated above on the terms and conditions set forth herein.

**NO OTHER PROMISES OR REPRESENTATIONS HAVE BEEN MADE TO ME BY THE PROSECUTOR, OR BY ANYONE ELSE, NOR HAVE ANY THREATS BEEN MADE OR FORCE USED TO INDUCE ME TO PLEAD GUILTY.**

I further state that I have not had any drugs, medication, or alcohol within the past 48 hours except as stated here:

I understand that this Plea Agreement will take effect and will be binding as to the Parties **only** after all necessary signatures have been affixed hereto.

I have personally and voluntarily placed my initials on every page of this Agreement and have signed the signature line below to indicate that I have read, understand, and approve all of the provisions of this Agreement, both individually and as a total binding agreement.

5-21-21 [signature]
DATE **JEREMY BERNARD BROWN**

## XIII. COUNSEL'S ACKNOWLEDGMENT

I have discussed this case with my client in detail and have advised my client of all of my client's rights and all possible defenses. My client has conveyed to me that my client understands this Agreement and consents to all its terms. I believe the plea and disposition set forth herein are appropriate under the facts of this case and are in accord with my best judgment. I concur in the entry of the plea on the terms and conditions set forth herein.

6/11/21
DATE

ERICA BARNES, ESQ.
Defendant's Counsel

## XIV. GOVERNMENT'S ACKNOWLEDGMENT

I have reviewed this matter and this Agreement and concur that the plea and disposition set forth herein are appropriate and are in the interests of justice.

PRIM F. ESCALONA
United States Attorney

6/14/21
DATE

KRISTY PEOPLES
Assistant United States Attorney